UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JENNIFER MARSH,** *et al.*, | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Civil Action No. EA-23-1157** |
| **BOTTOMS UP GENTLEMEN'S CLUB, LLC,** *et al.*, | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

**MEMORANDUM OPINION**

Plaintiff Jennifer Marsh initiated the above-captioned action on May 1, 2023, asserting violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* (FLSA), and Maryland state law based on the allegation that Defendants Bottoms Up Gentlemen's Club, LLC (Bottoms Up) and Chez Joey, LLC (Chez Joey) failed to pay direct wage compensation for all hours worked, and seeking damages, attorney's fees, and costs. ECF No. 1. On October 17, 2023, Ms. Marsh filed an Amended Complaint that added Plaintiff Lakiea Williams as a party. ECF No. 10. Pending before the Court is Plaintiffs' renewed motion for sanctions. ECF No. 46. Defendants declined to file a response; thus, the motion is fully briefed. No hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, the motion is granted.

I.    **BACKGROUND**

A.    **Factual Background**[1]

Bottoms Up and Chez Joey are Maryland limited liability companies with their principal place of business in Baltimore, Maryland, which were operated as strip clubs at a single business location in Baltimore during the relevant timeframe (May 2020 through February 2, 2023). ECF

---

[1] The factual background is drawn from the salient allegations in the First Amended Complaint (ECF No. 10).

No. 10 ¶¶ 2, 8–10, 17.  During the relevant timeframe, Defendants employed Ms. Marsh as a manager and bartender and Ms. Williams as a bartender and dancer at Bottoms Up and Chez Joey.  *Id.* at ¶¶ 22–23.  Ms. Marsh customarily worked about five shifts per week for an average total of 35 hours per week, and Ms. Williams customarily worked about five shifts per week as a bartender and about five shifts per week as a dancer for an average total of 70 hours per week.[2] *Id.* at ¶¶ 24, 26.  Defendants had knowledge of all of the hours Plaintiffs worked and the requirement under federal and state law to pay Plaintiffs wages for hours worked, but did not pay Plaintiffs direct wages.  *Id.* at ¶¶ 27, 32, 39.  Plaintiffs received compensation exclusively through tips.  *Id.* at ¶ 33.

### B.    Procedural History

After Defendants did not timely file a response to the Amended Complaint, Plaintiffs moved for Clerk's Entry of Default (ECF No. 16), which was entered on January 3, 2024 (ECF Nos. 17–20).  Defendants then filed a motion to set aside the default (ECF No. 21), which the Court granted (ECF Nos. 23, 24).  Thereafter, the Court entered a Scheduling Order, which was amended following the parties' joint request.  ECF Nos. 29-1, 32–33.  Under the Amended Scheduling Order, discovery was set to close on December 13, 2024.  ECF No. 33.  The Court also entered an Order on Discovery Dispute Procedure, which explained the parties' duties to read and comply with the Federal Rules of Civil Procedure and the Local Rules of this Court, including the Discovery Guidelines of the Court.  ECF No. 30 at 1.[3]

---

[2] The First Amended Complaint outlines discrete periods of unemployment and accounts for weeks with no or less work, as well as discrete periods of time when Ms. Marsh would work overtime.  ECF No. 10 ¶¶ 24–26.

[3] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files system printed at the top of the cited document.

On August 12, 2024, Plaintiffs requested a conference with the Court to discuss Defendants' failure to respond to written discovery requests and defense counsel's failure to engage with plaintiffs' counsel to resolve the discovery dispute. ECF No. 35. In response, the Court ordered defense counsel to, among other things, respond to plaintiffs' counsel's request for a conference regarding the status of discovery and file a report outlining the status of discovery by August 16, 2024. ECF No. 36. Defendants did not file the report as directed. On August 16, 2024, Plaintiffs again requested a conference with the Court, representing that defense counsel had not responded to plaintiffs' counsel's multiple attempts at contact. ECF No. 38. On August 20, 2024, the undersigned held a discovery conference with counsel for the parties (ECF No. 44), at which time defense counsel indicated that he believed Defendants would be filing a bankruptcy petition, but they had not yet done so (ECF Nos. 41 ¶ 1; 42 ¶ 1). Defense counsel agreed that if Defendants had not filed for bankruptcy, they would respond to Plaintiffs' written discovery requests by August 27, 2024.

On October 17, 2024, Plaintiffs filed a motion for sanctions seeking entry of a default judgment against Defendants for failing to respond the discovery requests. ECF No. 40. Defendants responded by alleging that they would be filing for bankruptcy imminently. ECF Nos. 41–42. The Court denied Plaintiffs' motion for sanctions without prejudice and provided Defendants until November 27, 2024, to respond to the pending discovery requests. ECF No. 45. The Court also warned that "failure to comply with a discovery order such as this one may result in the imposition of sanctions, including rendering a default judgment against the disobedient party." *Id*. at 4. When Defendants again failed to respond to Plaintiffs' discovery requests, Plaintiffs renewed their motion for sanctions. ECF No. 46. To date, Defendants have not responded to this motion, which has been pending for more than 14 days. *See* Local Rule 105.2(a).

## II.    DISCUSSION

Plaintiffs seek to have the Court enter a default judgment against Defendants as a sanction pursuant to Federal Rule of Civil Procedure 37 and the Court's inherent authority.  ECF No. 46 at 1.  In support of this motion, Plaintiffs assert that Defendants still have not responded to written discovery requests or filed a bankruptcy petition notwithstanding the Court's directives during the discovery conference and November 20, 2024 Order.  *Id*. at ¶¶ 7–15.

### A.    Default Judgment as a Sanction

Under Federal Rule of Civil Procedure 37(b)(2)(A), the Court has wide discretion to issue an order imposing sanctions for violation of a discovery order.  *Mutual Fed. Sav. & Loan Ass'n* v. *Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989).  Available sanctions under this rule include "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(vi).  This Court has previously found that a party's failure to respond to discovery can properly result in dismissal or default.  *E.g.*, *Proctor* v. *Charlestown Cmty., Inc.*, Civil Action No. GLR-22-1365, 2023 WL 8478903, at *3 (D. Md. Dec. 7, 2023); *Franklin* v. *Tri-Cnty. Council for the Lower E. Shore of Md.*, Civil Action No. ELH-15-786, 2016 WL 3653966, at *3 (D. Md. July 8, 2016).  When invoking the sanction of dismissal or default, the Court's "range of discretion is more narrow" because of the competing need to enforce discovery orders and to protect "the party's rights to a trial by jury and a fair day in court."  *Mutual Fed. Sav. & Loan Ass'n*, 872 F.2d at 92.

Accordingly, the Court must engage in a four-part analysis to determine whether such a sanction is warranted, examining:  "(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice [the] noncompliance caused [the] adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic

sanctions." *Id*. (citing *Wilson* v. *Volkswagen of America, Inc.*, 561 F.2d 494, 503-504 (4th Cir.1977)); *see also Smith* v. *Devine*, 126 F.4th 331, 343 (4th Cir. 2025). Importantly, in addition to the four-part analysis, the Fourth Circuit Court of Appeals requires that the district court provide an "explicit and clear" warning to the noncomplying party before dismissing a case with prejudice or entering a default judgment. *Malhotra* v. *KCI Techs., Inc.*, 240 Fed. Appx. 588, 590 (4th Cir. 2007); *Hathcock* v. *Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995); *but see Mey* v. *Phillips*, 71 F.4th 203, 218 (4th Cir. 2023) (finding that "an explicit warning is not always necessary" prior to entry of a default judgment when the party had adequate notice of the potential sanction).

       1.   <u>Bad Faith</u>

Defendants have consistently ignored the Federal and Local Rules and court orders related to discovery throughout this action. First, Defendants wholly failed to respond to discovery within the deadline provided for in Federal Rules of Civil Procedure 33(b)(2) and 34(b)(2)(A), notwithstanding that Plaintiffs voluntarily extended the deadline under Rule 29(b). ECF No. 35 ¶¶ 1–2, 5. Second, after missing the deadline, defense counsel refused to engage in a good faith discovery conference with plaintiffs' counsel as required by Local Rule 104.7, despite being required to do so by the Court. ECF Nos. 35 ¶¶ 9, 15, 18 (discussing plaintiffs' counsel's three unanswered attempts to discuss dispute); 36 (ordering defense counsel to confer with plaintiffs' counsel per standing Order and Local Rules); 38 ¶¶ 23, 25, 27 (describing plaintiffs' counsel's additional three attempts to discuss dispute). Third, Defendants refused to heed Court directives regarding the conduct of discovery. The Court entered two scheduling orders (ECF Nos. 29-1, 33), each of which set a deadline for the completion of discovery, yet Defendants' discovery responses remain incomplete. Defendants have likewise discounted the Court's Order governing discovery disputes (ECF No. 30) by failing to engage with plaintiffs'

counsel.  Following the discovery conference (ECF No. 44), Defendants failed to abide by the

Court's directive to respond to the discovery requests if they did not file for bankruptcy by

August 27, 2024 (ECF No. 41 ¶ 4; 46 ¶¶ 5–9).  Finally, Defendants did not comply with the

Court's November 20, 2024 Order, which directed Defendants to respond to the discovery

requests within seven days.  ECF No. 45.

Defendants' demonstrated pattern of recalcitrance and disregard for orders governing the

conduct of discovery can only be characterized as bad faith.  *E.g.*, *Boyd* v. *SFS Commc'ns, LLC*,

Civil Action No. PJM-15-3068, 2018 WL 4214395, at *3 (D. Md. Sept. 5, 2018), *report and*

*recommendation adopted*, 2018 WL 7047646 (D. Md. Dec. 14, 2018) (finding that defendants'

repeated failure to respond to discovery requests and abide by court orders, paired with failure to

file for bankruptcy in accord with their representations, constituted bad faith); *see also Robertson*

v. *DECO Sec., Inc.*, Civil Action No. WDQ-09-3093, 2010 WL 3781951, at *4 (D. Md. Sept. 22,

2010) ("noncompliance with discovery orders supports a finding of bad faith").  It is also worth

noting that Defendants, who initially failed to respond to the Complaint within the prescribed

timeframe (ECF Nos. 17–20), have also failed to respond to the pending motion for sanctions in

which Plaintiffs seek entry of a default judgment.

       2.      Material Prejudice

Defendants' refusal to produce discovery has resulted in material prejudice to Plaintiffs,

who have been significantly limited in their ability to prosecute this action.  A sanction of default

judgment "should be confined to the flagrant case in which it is demonstrated that the failure to

produce materially affect(s) the substantial rights of the adverse party and is prejudicial to the

presentation of [their] case."  *Wilson* v. *Volkswagen of Am., Inc.*, 561 F.2d 494, 504 (4th Cir.

1977) (internal quotation marks and citations omitted).  "The purpose of pre-trial discovery is for

a litigating attorney to obtain information from the opposing party, information which in many

- 6 -

cases is not otherwise available." *Middlebrooks* v. *Sebelius*, Civil Action No. PJM-04-2792, 2009 WL 2514111, at *3 (D. Md. Aug. 13, 2009). As discussed in the Court's prior Orders, the core factual issue in this action is whether Defendants failed to pay direct wage compensation for all hours worked by Plaintiffs. ECF Nos. 23, 45. The lack of Defendants' discovery responses hampers Plaintiffs' ability to try their case, whether by a dispositive pretrial motion or at trial. Without question, Defendants' repeated failure to engage has caused Plaintiffs prejudice. *E.g.*, *Boyd*, 2018 WL 4214395, at *4 (finding that Plaintiffs were severely prejudiced by Defendants' failure to respond to discovery, warranting the "severe sanction[ ]" of default judgment).

### 3. Need for Deterrence

Through their inaction, Defendants have demonstrated that they view directives of the Court as optional requests. *E.g.*, ECF No. 38 ¶ 29 ("Defendants have refused to engage in discovery and . . . ha[ve] similarly refused to comply with this Court's Order to work cooperatively with Plaintiffs"); ECF No. 45 at 2 ("Defense counsel agreed that if Defendants had not filed for bankruptcy, they would respond to Plaintiffs' written discovery requests by August 27, 2024."); 46 ¶ 9 ("Defendants . . . to date have continued to wholly fail or refuse to response to Plaintiff[s'] . . . written discovery requests."). Defendants' disregard for the Court's Orders indicates a strong need for deterrence. *E.g. Doggett* v. *City of Hyattsville, Md.*, Civil Action No. TDC-13-3889, 2014 WL 6471748, at *4 (D. Md. Nov. 17, 2014) ("There is a need for deterrence in cases where a party has brought the case to a significant standstill through failure to participate in discovery."); *Mutual Fed. Sav. & Loan Ass'n*, 872 F.2d at 92 (citing *National Hockey League* v. *Metropolitan Hockey Club Inc.*, 427 U.S. 639, 643 (1976)) ("[N]ot only does the noncomplying party jeopardize his or her adversary's case by such indifference, but to ignore such bold challenges to the district court's power would encourage other litigants to flirt with similar misconduct.").

4.    Effectiveness of Other Sanctions

No sanction other than default judgment would be effective against Defendants.  Defense counsel has represented that Defendants intend to file for bankruptcy.  ECF No. 41.  Monetary sanctions are therefore unlikely to secure compliance and may be more onerous than default judgment.  *E.g.*, *Green* v. *John Chatillon & Sons*, 165 F.3d 18 (Table), 1998 WL 736459 at *2 (4th Cir. 1998) (upholding finding that defendant was "unlikely to be able to pay monetary sanctions" since she had recently filed for bankruptcy).  Further court orders are unlikely to be effective given Defendants' previous disregard of multiple discovery orders.  Defendants' disregard of the Court's most recent order after having been warned of default judgment as a possible sanction for their failure to comply underscores the need for a more severe sanction. *E.g.*, *Boyd*, 2018 WL 4214395, at *4 (defendants' refusal to heed court orders after being warned of default judgment as a possible sanction supported a finding that any sanction less drastic than default would be inadequate).

5.    Explicit and Clear Warnings

Finally, default judgment is appropriate because Defendants have been warned of this potential outcome if they failed to comply with discovery orders.  First, the Standing Order on Discovery explained the duty to be familiar with the Federal and Local Rules governing discovery, including sanctions for failure to fulfill discovery obligations.  ECF No. 30.  As noted, Rule 37(b) outlines the available sanctions for failure to comply with a court order, up to and including entry of a default judgment.  Fed. R. Civ. P. 37(b)(2)(A)(vi).  Second, the November 20, 2024 Order advised Defendants that failure to comply with a discovery order could result in sanctions, including rendering a default judgment against the disobedient party.  ECF No. 45 at 4. This Order was entered after Plaintiffs first moved for sanctions in the form of a default judgment.  ECF No. 40.  Defendants' refusal to heed a court order after having notice of

Plaintiffs' intent to seek a default judgment and being warned of that potential outcome if they failed to comply with the Court's directive represents circumstances "where the entry of default judgment . . . for systemic discovery violations is the natural next step in the litigation." *Mey*, 71 F.4th at 218.

### B.    Sufficiency of the Well-Pleaded Allegations

One of the "legal effect[s] of a default judgment is that the defendant is deemed to have admitted 'the plaintiff's well-pleaded allegations of fact.'" *Id.* at 223 (quoting *Ryan* v. *Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). A defaulting party does not, however, "admit mere conclusions of law." *Frozen Wheels, LLC* v. *Potomac Valley Home Med., Inc.*, Civil Action No. CCB-20-2479, 2024 WL 1132092, at *3 (D. Md. Mar. 15, 2024) (Coulson, J.). As a consequence, "the Court must consider whether the unchallenged facts constitute a legitimate cause of action." *Id.*; *see also Select Specialty Hosp. - Quad Cities, Inc.* v. *WH Administrators, Inc.*, Civil Action No. PX-18-03586, 2020 WL 4569521, at *3 (D. Md. Aug. 7, 2020) (observing that "the pleading standards announced in *Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544 (2007), [apply] in the context of default judgments").

These same principles apply regardless of the posture of the case when the Court contemplates entry of a default judgment. The Fourth Circuit Court of Appeals has cautioned that before entering a default judgment as a sanction for discovery violations the Court must be satisfied that the well-pleaded allegations in the operative pleading support the requested relief. *Mey*, 71 F.4th at 223; *see also Anderson* v. *Foundation for Advancement, Educ. & Emp. of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (vacating the district court's entry of default as a sanction on one count because the pleaded allegations were insufficient to support the asserted claim); *accord Scalia* v. *Vaughan Home Care Servs., Inc.*, Civil Action No. ADC-19-3164, 2020

WL 4732133, at *2 (D. Md. Aug. 13, 2020); *Garnier-Thiebaut, Inc.* v. *Castello 1935 Inc.*, Civil

Action No. SDT-17-3632, 2019 WL 6696694, at *8 (D. Md. Dec. 6, 2019) (Thacker, J., sitting

by designation); *Hernandez Caceres* v. *Sonny-N-Son's Painting, LLC*, No. 1:18-CV-01427-

MSN, 2019 WL 13296799, at *3 (E.D. Va. Aug. 21, 2019).

In Counts I and II Plaintiffs allege violations of the FLSA and the Maryland Wage Hour

Law, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.* (MWHL), based on Defendants' failure to

pay a direct hourly wage for their regular and overtime work.  ECF No. 10 ¶¶ 44–45, 52–53.

"The FLSA requires that employers pay nonexempt employees at least the federal minimum

wage for all hours worked and overtime pay for hours worked in excess of 40 hours per week."

*Bonilla* v. *Dops, Inc.*, Civil Action No. GJH-14-3055, 2016 WL 828096, at *3 (D. Md. Feb. 29,

2016) (citing 29 U.S.C. §§ 206, 207).  "The MWHL is the 'state parallel' to the FLSA, and the

requirements for pleading a claim under the MWHL 'mirror those of the federal law.'"  *Quickley*

v. *University of Maryland Med. Sys. Corp.*, Civil Action No. CCB-12-321, 2012 WL 4069757, at

*6 (D. Md. Sept. 14, 2012) (quoting *Brown* v. *White's Ferry, Inc.*, 280 F.R.D. 238, 242 (D. Md.

2012); *see also* Md. Code Ann., Lab & Empl. §§ 3-413(b); 3-415(a).  In support of their FLSA

and MWHL claims, Plaintiffs allege that Defendants did not directly pay them wages as

compensation for their regular and overtime work," *see supra* I.A., and thus have pleaded a

plausible violation of the FLSA and MWHL.  *See Clancy* v. *Skyline Grill, LLC*, Civil Action No.

ELH-12-1598, 2012 WL 5409733, at *3 (D. Md. Nov. 5, 2012) (Grimm, J.), *report and

recommendation adopted*, 2013 WL 625344 (D. Md. Feb. 19, 2013).

In Count III Plaintiffs further allege a violation of Maryland Wage Payment and

Collection Law, Md. Code Ann., Lab. & Empl. § 3-501 *et seq.* (MWPCL).  Among other things,

this statute provides that employers "shall pay each employee at least once in every 2 weeks or

twice in each month."  *Id.* at *4 (quoting Lab. & Empl. § 3-502(a)(1)(ii)).  The two Maryland

laws work in tandem. "While the MWHL provides a wage baseline, the MWPCL 'governs the timing of wage payments.'" *Morris* v. *King Oak Enterprises, Inc.*, Civil Action No. AAQ-24-782, 2024 WL 4476303, at *5 (D. Md. Oct. 11, 2024) (quoting *Acevedo* v. *McCalla*, Civil Action No. MJM-22-1157, 2023 WL 1070436, at *5 (D. Md. Jan. 27, 2023)). Here, Ms. Marsh and Ms. Williams allege that Defendants failed to fully and timely compensate them for all hours worked at direct hourly wage rates each pay period. ECF No. 10 ¶¶ 60–61; *see also supra* I.A. (alleging that Defendants did not directly pay Plaintiffs wages for regular or overtime work and that Plaintiffs were paid tips only). Failure to pay wages "clearly contravenes the twice-per-month payments the MWPCL requires." *Morris*, 2024 WL 4476303, at *5

All three statutes at issue in this action also require that a plaintiff "demonstrate that an employee-employer relationship existed with [the] purported employer." *Henderson* v. *S & K Sec. Consultants, Inc.*, Civil Action No. 21-CV-2484, 2025 WL 81490, at *5 (D. Md. Jan. 13, 2025). Here, Ms. Marsh and Ms. Williams aver that Defendants had control over the terms and conditions of their employment; held full authority over their duties, hours, and compensation; and had full authority to hire, fire, discipline, or alter the terms of their employment. ECF No. 10 ¶¶ 12–14. These allegations suffice to establish the required employment relationship. *Prasch* v. *Bottoms Up Gentlemen's Club, LLC*, Civil Action No. LKG-23-634, 2024 WL 2977885, at *8 (D. Md. June 13, 2024); *see also Degidio* v. *Crazy Horse Saloon and Rest., Inc.*, No. 13-CV-02136-BHH, 2015 WL 5834280, at *7 (D.S.C. Sept. 30, 2015) (finding it "significant that the vast majority of the district courts (including those within the Fourth Circuit) to have considered whether exotic dancers are employees or independent contractors, have found them to be employees") (collecting cases).

In addition, to "be subject the FLSA's requirements, a business must be an '[e]nterprise engaged in commerce or in the production of goods for commerce.'" *Su* v. *Spearman, Inc.*, Civil

Action No. TDC-20-3585, 2024 WL 665445, at *6 (D. Md. Feb. 16, 2024) (alteration in original) (quoting 29 U.S.C. §§ 206(a), 207(a), 203(s)(1)). As relevant here, such an enterprise must have at least $500,000 in "annual gross volume of sales made or business done" and be engaged in trade or commerce "among the several States or between any State and any place outside thereof." 29 U.S.C. §§ 203(b), (s)(1)(A)(i)-(ii). Ms. Marsh and Ms. Williams allege that Defendants had gross sales or revenue in excess of $500,000 in each relevant year, and that Defendants took payment from customers via credit card transactions and served beverages manufactured outside of Maryland. ECF No. 10 ¶¶ 29–31. These allegations establish that Bottoms Up and Chez Joey were enterprises within the ambit of the FLSA. *See Henderson*, 2025 WL 81490, at *8 ("[T]he Fourth Circuit has held that a business falls within the FLSA, even when its activities occur only locally, 'when an enterprise employs workers who handle goods or materials that have moved or have been produced in interstate commerce.'") (quoting *Brock* v. *Hamad*, 867 F.2d 804, 808 (4th Cir. 1989)).

Plaintiffs further allege that Defendants are joint employers, averring that they had "common ownership, manager, and/or agents commonly acting on behalf of both Defendants." ECF No. 10 ¶ 12; *see also id.* at ¶¶ 11, 13, 15–16. This Court has found similar allegations sufficient to establish that defendants were a joint employer for purposes of the FLSA. *E.g.*, *Prasch*, 2024 WL 2977885, at *7. As the Fourth Circuit has explained, "the joint employment doctrine: (1) treats a worker's employment by joint employers as 'one employment' for purposes of determining compliance with the FLSA's wage and hour requirements and (2) holds joint employers jointly and severally liable for any violations of the FLSA." *Salinas* v. *Commercial Interiors, Inc.*, 848 F.3d 125, 134 (4th Cir. 2017). Plaintiffs' allegations are therefore sufficient to plausibly state a claim for violations of the FLSA, MWHL, and the MWPCL.

While the issue of liability is resolved, damages remain an open question.  When assessing damages or other relief, the Court cannot accept as true the well-pleaded allegations but must instead make an independent determination that is "supported by evidence introduced either at a hearing or by affidavit or other records."  *Select Specialty Hosp. - Quad Cities, Inc.*, 2020 WL 4569521, at *3; *Entrepreneur Media, Inc.* v. *JMD Ent. Grp., LLC*, 958 F. Supp. 2d 588, 593 (D. Md. 2013); *see also Frozen Wheels, LLC*, 2024 WL 1132092, at *3 ("A plaintiff's assertion of a sum in a complaint does not make the sum 'certain' unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence.").  When evaluating damages, the Court may "conduct hearings or make referrals," Fed. R. Civ. P. 55(b)(2), although an evidentiary hearing is not required in every circumstance, *Monge* v. *Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (collecting cases).  Here, the Court lacks sufficient information to evaluate Plaintiffs' claims for damages.

## III.    CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiffs' renewed motion for sanctions (ECF No. 46) is GRANTED.  A separate Order follows.


Date: March 7, 2025                                         _____/s/_____
                                                            Erin Aslan
                                                            United States Magistrate Judge