UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JENNIFER MARSH,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. EA-23-1157 |
| **BOTTOMS UP GENTLEMEN'S CLUB, LLC,** *et al.*, | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Plaintiff Jennifer Marsh initiated the above-captioned action on May 1, 2023, asserting violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* (FLSA), the Maryland Wage Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.* (MWHL), and Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. § 3-501 *et seq.* (MWPCL) based on Defendants Bottoms Up Gentlemen's Club, LLC (Bottoms Up) and Chez Joey, LLC's (Chez Joey) alleged failure to fully and timely pay direct wage compensation for all hours worked. ECF No. 1. On October 17, 2023, Ms. Marsh filed an Amended Complaint that added Plaintiff Lakiea Williams as a party. ECF No. 10. On March 7, 2025, the Court entered a default judgment in favor of Ms. Marsh and Ms. Williams on all claims. ECF No. 49.

Pending before the Court is the Plaintiffs' motion for damages, attorney's fees, and costs. ECF No. 50. Bottoms Up and Chez Joey declined to file a response; thus, the motion is fully briefed. No hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, the motion is granted, and the Court will enter an award of $95,216.00 in damages for Ms. Marsh; $276,205.00 in damages for Ms. Williams; $16,490.00 in attorney's fees; and $802 in costs.

**I.       BACKGROUND[1]**

Bottoms Up and Chez Joey are Maryland limited liability companies with their principal place of business in Baltimore, Maryland, which were operated as strip clubs at a single business location during the relevant timeframe (May 2020 through February 2, 2023).  ECF No. 10 ¶¶ 2, 8–10, 17.  Defendants jointly employed more than 15 employees (including bartenders, managers, security, and exotic dancers) during the relevant timeframe.  ECF Nos. 50-1 ¶ 5; 50-2 ¶ 5.  Defendants employed Ms. Marsh as a manager and bartender and Ms. Williams as a bartender and dancer at Bottoms Up and Chez Joey.  ECF Nos. 50-1 ¶ 4; 50-2 ¶ 4.

On March 7, 2025, the Court entered default judgment in favor of the Plaintiffs and against Bottoms Up and Chez Joey as a sanction pursuant to Federal Rule of Civil Procedure 37 because Defendants had persistently failed to respond to discovery requests and adhere to the Court's discovery orders.  ECF No. 49; *see also* Fed. R. Civ. P. 37(b)(2)(A)(vi).  In so ruling, the Court noted that it "lack[ed] sufficient information to evaluate Plaintiffs' claims for damages."  ECF No. 48; *Marsh* v. *Bottoms Up Gentlemen's Club, LLC*, Civil Action No. EA-23-1157, 2025 WL 744067, at *6 (D. Md. Mar. 7, 2025).  Thereafter, Plaintiffs filed sworn declarations in which they, among other things, identified the approximate number of hours and weeks they had worked for the Defendants during their respective periods of employment at Bottoms Up and Chez Joey.[2]  ECF Nos. 50-1, 50-2.

---

[1] The factual background is drawn from Plaintiffs' sworn declarations (ECF Nos. 50-1, 50-2) and the well pleaded allegations of the Amended Complaint (ECF No. 10), which were deemed to be admitted as to liability upon entry of a default judgment against Defendants. *Mey* v. *Phillips*, 71 F.4th 203, 223 (4th Cir. 2023).

[2] In her declaration Ms. Marsh identified the relevant period of her employment as May 2020 through February 14, 2023.  ECF No. 50-1 ¶ 4.  Ms. Williams identified her relevant period of employment as March 2020 through December 2022.  ECF No. 50-2 ¶ 4.

In their declarations, Plaintiffs attested that they could provide only estimates of the hours they had worked because Defendants had failed to engage in discovery and produce, among other things, records of Plaintiffs' employment during the relevant timeframe, which were in Defendants' sole custody, possession, and control. ECF Nos. 50-1 ¶¶ 9–11; 50-2 ¶¶ 8–10. Ms. Marsh attested that she customarily worked an average of 40 hours per week (ECF No. 50-1 ¶ 12), whereas Ms. Williams attested that she customarily worked 40 hours per week as a bartender and 25 hours per week as an exotic dancer for a total average of 65 hours per week (ECF No. 50-2 ¶¶ 11–12). Both Ms. Marsh and Ms. Williams worked a total of 100 weeks during the relevant timeframe.[3] ECF Nos. 50-1 ¶ 13; 50-2 ¶¶ 13–14. Bottoms Up and Chez Joey did not submit any evidence to the contrary.

Bottoms Up and Chez Joey had knowledge of all the hours Ms. Marsh and Ms. Williams worked, but did not pay them direct wages. ECF Nos. 10 ¶¶ 3, 27, 32, 39; 50-1 ¶ 18; 50-2 ¶ 23–27. Ms. Williams further attested that Defendants did not pay her an hourly rate equal to one-and-a-half times the Maryland minimum wage for overtime (more than 40 hours per week) that she worked as a bartender or exotic dancer. ECF No. 50-2 ¶ 27. Instead, Ms. Marsh and Ms. Williams received compensation exclusively through tips. ECF Nos. 10 at ¶ 33; 50-1 ¶ 19; 50-2 ¶ 28–29. Defendants never informed Ms. Marsh or Ms. Williams of the Maryland "tip-credit" rule outlined below. *See* Section II.A., *infra*; ECF Nos. 50-1 ¶¶ 21–22; 50-2 ¶¶ 35–37.

---

[3] Ms. Marsh attested that she worked 10 weeks between May to December 2020; 40 weeks between January and December 2021; 45 weeks between January and December 2022; and five weeks between January and February 14, 2023. ECF No. 50-1 ¶¶ 13–17. Ms. Marsh also identified discrete periods of unemployment and weeks with no work or less work. *Id.* at ¶¶ 6–8; *see also* ECF No. 10 ¶ 24.

Ms. Williams attested that she worked as a bartender for 10 weeks between May and December 2020; 45 weeks between January and December 2021; and 45 weeks between January and December 2022. ECF No. 50-2 ¶¶ 15, 17, 19. Ms. Williams further attested that she worked the same number of weeks as an exotic dancer. *Id.* at ¶¶ 16, 18, 20.

Additionally, Defendants garnished Ms. Williams' tips while she worked at Bottoms Up and Chez Joey and charged her additional fees. When working as an exotic dancer, Ms. Williams paid roughly $20.00 per shift as a "house fee"; $10.00 per shift to Defendants' door man or security; $25.00 per shift to the Defendants' "house mom"; and approximately 50 percent of credit card tips to Defendants as a "credit card service fee."[4] ECF No. 50-2 ¶¶ 30–33. Ms. Williams estimated that as a result of these various fees, Defendants withheld approximately $90.00 from her pay each shift. *Id.* at ¶ 34. Ms. Williams customarily worked approximately five shifts per week as an exotic danger for approximately 100 weeks during the relevant timeframe. *Id.* at ¶ 14. Thus, the total amount of lost tips Ms. Williams claims is $45,000.00.

The lost regular and overtime wages Ms. Marsh and Ms. Williams claim as damages are summarized in four charts below.[5] ECF Nos. 50-1 ¶¶ 14–17, 23; 50-2 ¶¶ 11–21, 39.

**Chart 1**
**Jennifer Marsh Lost Wages**

| Dates | Minium Wage | Hours Per Week | Wages Per Week | Weeks Worked | Subtotal |
|---|---|---|---|---|---|
| May - December 2020 | $11.00 | 40 | $440.00 | 10 | $4,400.00 |
| January - December 2021 | $11.75 | 40 | $470.00 | 40 | $18,800.00 |
| January - December 2022 | $12.50 | 40 | $500.00 | 45 | $22,500.00 |
| January - February 14, 2023 | $13.25 | 40 | $530.00 | 5 | $2,650.00 |
| | | | | **Total** | **$48,350.00** |

---

[4] Courts in the Fourth Circuit have described "house fees" "as a cost 'entertainers are often required to pay . . . to the club in order to be able to dance there.'" *Butler* v. *PP&G, Inc.*, Civil Action No. JRR-20-3084, 2023 WL 3580374, at *3 n.3 (D. Md. May 22, 2023) (Hurson, J.), *report and recommendation adopted as modified*, 2023 WL 12090213 at *3 n.3 (D. Md. June 25, 2023) (quoting *Degidio* v. *Crazy Horse Saloon & Rest., Inc*, No. 4:13-CV-02136-BHH, 2015 WL 5834280, at *1 (D.S.C. Sept. 30, 2015)). "A 'House Mom' has been described as 'an employee who collects entertainers' house fees, provides dancers with toiletries, and administers breathalyzer tests.'" *Butler*, 2023 WL 3580374, at *3 n.5 (quoting *Hurst* v. *Youngelson*, No. 1:15-CV-03560, 2019 WL 12521475, at *4 (N.D. Ga. Dec. 26, 2019)).

[5] The applicable minimum wage and overtime multiplier for an employer (employing 15 or more employees) during the relevant timeframe are set forth in Maryland Code Annotated, Labor and Employment, Section 3-413(c)(1)(iii)-(v) (2019) and Section 3-415(a) (2017).

4

**Chart 2**

**Lakiea Williams Lost Wages (Regular Time)**

| Dates | Minium Wage | Hours Per Week | Wages Per Week | Weeks Worked | Subtotal |
|---|---|---|---|---|---|
| May - December 2020 | $11.00 | 40 | $440.00 | 10 | $4,400.00 |
| January - December 2021 | $11.75 | 40 | $470.00 | 45 | $21,150.00 |
| January - December 2022 | $12.50 | 40 | $500.00 | 45 | $22,500.00 |
| | | | | **Total** | **$48,050.00** |

**Chart 3**

**Lakiea Williams Lost Wages (Overtime)**

| Dates | Overtime Wage | Hours Per Week | Wages Per Week | Weeks Worked | Subtotal |
|---|---|---|---|---|---|
| May - December 2020 | $16.50 | 25 | $412.50 | 10 | $4,125.00 |
| January - December 2021 | $17.63 | 25 | $440.75 | 45 | $19,833.75 |
| January - December 2022 | $18.75 | 25 | $468.75 | 45 | $21,093.75 |
| | | | | **Total** | **$45,052.50** |

**Chart 4**

**Lakiea Williams Lost Wages (Garnished Tips & Fees)**

| Dates | Tips Withheld Per Shift | Shifts Per Week | Weeks Worked | Total |
|---|---|---|---|---|
| May 2020 - December 2022 | $90 | 5 | 100 | **$45,000.00** |

## II. DISCUSSION

Following the Court's entry of a default judgment against Bottoms Up and Chez Joey, Ms. Marsh and Ms. Williams seek damages, as well as attorney's fees and costs, each of which is addressed in turn below.

### A. Damages

Ms. Marsh and Ms. Williams have secured a default judgment against Bottoms Up and Chez Joey on three claims. ECF Nos. 48–49. Defendants have been found liable on Counts I and II for FLSA and MWHL violations based on their failure to pay a direct hourly wage for

5

regular and overtime work. *Id.* "The FLSA requires that employers pay nonexempt employees at least the federal minimum wage for all hours worked and overtime pay for hours worked in excess of 40 hours per week." *Bonilla* v. *Dops, Inc.*, Civil Action No. GJH-14-3055, 2016 WL 828096, at *3 (D. Md. Feb. 29, 2016) (citing 29 U.S.C. §§ 206-207). "The MWHL is the 'state parallel' to the FLSA, and the requirements for pleading a claim under the MWHL 'mirror those of the federal law.'" *Quickley* v. *University of Maryland Med. Sys. Corp.*, Civil Action No. CCB-12-321, 2012 WL 4069757, at *6 (D. Md. Sept. 14, 2012) (quoting *Brown* v. *White's Ferry, Inc.*, 280 F.R.D. 238, 242 (D. Md. 2012)). Defendants were also found liable on Count III for an MWPCL violation based on their failure to timely pay Ms. Marsh and Ms. Williams and on their unwarranted deductions from Ms. Williams' wages. ECF Nos. 48–49; *see also Chavez* v. *Besie's Corp.*, Civil Action No. GJH-14-1338, 2014 WL 5298032, at *2 (D. Md. Oct. 10, 2014) ("Further, under the MWPCL, '[a]n employer may not make a deduction from the wage of an employee' except under certain conditions.'") (alteration in original) (quoting Md. Code Ann., Lab. & Empl. § 3-503).

Although the Court entered judgment against Defendants on three different claims, Ms. Marsh and Ms. Williams may only recover damages under one theory of liability. *General Tel. Co. of the Nw., Inc.* v. *Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 333 (1980) (instructing that "courts can and should preclude double recovery by an individual"); *see also Melendez* v. *Spilled Milk Catering, LLC*, Civil Action No. PWG-18-2135, 2019 WL 2921782, at *3 (D. Md. July 8, 2019) (A plaintiff may only recover "'an amount equivalent to the minimum wages she established as owed; she cannot recover three times that amount by . . . [aggregating recoveries] under the FLSA, MWHL, and MWPCL.'") (alteration in original) (quoting *Sanabria* v. *Cocody, Inc.*, Civil Action No. DKC-16-0365, 2017 WL 3022990, at *4 (D. Md. July 17, 2017)).

6

The FLSA, MWPCL, and MWHL all permit enhanced damages. 29 U.S.C. § 216(b); Md. Code Ann., Lab. & Empl. § 3-507.2(b); Md. Code Ann., Lab. & Empl. § 3-427(d)(1)(ii). The FLSA allows employees to recover "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Under the MWHL, "the employer shall be liable to the employee for the amount of unpaid wages, plus an equal amount of 'liquidated damages.'" Md. Code. Ann., Lab. & Empl. § 3-427(d)(1)(ii). The MWPCL allows recovery of "an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs" when "a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute." Md. Code Ann., Lab. & Empl. § 3-507.2(b). Enhanced damages under these statutes "serve the dual purposes of compensating employees for consequential losses, such as late charges or evictions, that can occur when employees who are not properly paid are unable to meet their financial obligations; and of penalizing employers who withhold wages without colorable justification." *Lopez* v. *Lawns 'R' Us*, Civil Action No. DKC-07-2979, 2008 WL 2227353, at *4 (D. Md. May. 23, 2008) (Schulze, J.), *report and recommendation adopted sub nom.*, 2008 WL 11509751 (D. Md. June 26, 2008).

When assessing damages or other relief, the Court cannot accept as true the well-pleaded allegations but must instead make an independent determination that is "supported by evidence introduced either at a hearing or by affidavit or other records." *Guzman* v. *Mahjoub*, Civil Action No. PX-17-1591, 2019 WL 2233351, at *2 (D. Md. May 23, 2019); *see also Entrepreneur Media, Inc.* v. *JMD Ent. Grp., LLC*, 958 F. Supp. 2d 588, 593 (D. Md. 2013) (noting that the Court may "rely instead on affidavits or documentary evidence in the record to determine the appropriate sum" of damages following entry of a default judgment). The Court may "conduct hearings or make referrals," Fed. R. Civ. P. 55(b)(2), although an evidentiary

7

hearing is not required in every circumstance, *Monge* v. *Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (collecting cases).

With respect to a claim for unpaid wages, plaintiffs have the initial burden to prove that they "in fact performed work for which [t]he[y] w[ere] improperly compensated and . . . produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson* v. *Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). A plaintiff may satisfy this burden through a sworn declaration. *E.g.*, *Juarez* v. *A.M.C. Constr., LLC*, Civil Action No. PWG-20-1508, 2022 WL 3586511, at *2 (D. Md. Aug. 22, 2022); *see also Clancy* v. *Skyline Grill, LLC*, Civil Action No. ELH-12-1598, 2012 WL 5409733, at *5 (D. Md. Nov. 5, 2012) (Grimm, J.) (collecting cases), *report and recommendation adopted*, 2013 WL 625344 (D. Md. Feb. 19, 2013). Upon such a showing, the "burden then shifts to the employer to come forward with evidence of the precise amount of work performed." *Anderson*, 328 U.S. at 687-688. "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688.

Here, Ms. Marsh and Ms. Williams have met their initial burden to produce sufficient evidence to show the amount and extent of their work by submitting their sworn declarations. ECF Nos. 50-1; 50-2. The Defendants have not responded to Plaintiffs' claims or challenged either the number of hours they worked or the claim of tip garnishment and fees. Thus, the remaining question is how much Ms. Marsh and Ms. Williams are entitled to in damages. Plaintiffs seek an award of all earned, unpaid wage compensation at the applicable minimum wage and overtime compensation under Maryland law, statutory liquidated damages, and reimbursement for the fees and tip garnishment. ECF No. 50 at 4, 7. As for liquidated damages, Ms. Marsh and Ms. Williams seek three times the amount of their earned and unpaid wages under the MWPCL or, alternatively, double damages under the MWHL. *Id.* at 11.

8

"The Fourth Circuit has held that a grant of liquidated damages is the 'norm' in cases in which the FLSA is violated." *Williams* v. *Maryland Off. Relocators*, 485 F. Supp. 2d 616, 620 (D. Md. 2007) (citing *Mayhew* v. *Wells*, 125 F.3d 216, 220 (4th Cir. 1997)).  Further, "it has become customary in this district to award double damages under the FLSA, but not treble damages under the MWPCL," when a defendant does not offer evidence of a bona fide dispute, and plaintiffs do not offer evidence of consequential damages attributable to the underpayments. *Fiallos* v. *Hamzah Slaughter House*, LLC, Civil Action No. JMC-20-3577, 2022 WL 16540001, at *7 (D. Md. Oct. 28, 2022) (collecting cases); *accord Morris* v. *King Oak Enters., Inc.*, Civil Action No. AAQ-24-782, 2024 WL 4476303, at *9 (D. Md. Oct. 11, 2024); *Guillen* v. *Armour Home Improvement, Inc.*, Civil Action No. DLB-19-2317, 2023 WL 3819295, at *18 (D. Md. June 5, 2023); *Butler* v. *PP&G, Inc.*, Civil Action No. JRR-20-3084, 2023 WL 3580374, at *1 (D. Md. May 22, 2023) (Hurson, J.), *report and recommendation adopted as modified*, 2023 WL 12090213 at *3 n.3 (D. Md. June 25, 2023).  Here, Defendants have not identified any bona fide dispute, and Plaintiffs do not allege any consequential damages.  Thus, an award of liquidated damages under the MWHL is appropriate.  *E.g.*, *Butler*, 2023 WL 3580374, at *8 (finding double damages under the MWHL more appropriate than treble damages under the MWPCL since the plaintiff could not prove consequential damages).

The applicability of the "tip credit" must be addressed in order to calculate the amount of unpaid minimum wages owed.  Under the MWHL, the tip credit allows an employer to directly pay tipped employees $3.63 per hour.  Md. Code Ann., Lab. & Empl. § 3-419(c).  To take advantage of this tip credit, the employee must have (1) "engaged in an occupation in which the employee customarily and regularly receives more than $30 each month in tips," (2) "been informed by the employer about the provisions of this section," and (3) "kept all of the tips that the employee received."  Md. Code Ann., Lab. & Empl. § 3-419(a); *see also Morris*, 2024 WL

9

4476303, at *8; *Butler*, 2023 WL 3580374, at *6.  All three elements must be met for an employer to take advantage of the tip credit.  *Sparks* v. *BlackDiamond Rest. LLC*, Civil Action No. TDC-24-353, 2025 WL 450301, at *4 (D. Md. Feb. 10, 2025) (Simms, J.), *report and recommendation adopted*, 2025 WL 1591751 (D. Md. Feb. 28, 2025).  The employer has the burden of proving that it satisfied the notice requirement to receive the tip credit benefit.  *E.g.*, *Prusin* v. *Canton's Pearls, LLC*, Civil Action No. JKB-16-0605, 2017 WL 5126156, at *4 (D. Md. Nov. 6, 2017).

Both Ms. Marsh and Ms. Williams attested that Defendants never informed them of the tip credit.  ECF No. 50-1 ¶ 20; ECF No. 50-2 ¶ 36.  Defendants have not refuted these assertions and thus have not carried their burden as to the notice requirement.  The MWHL provides that "[e]mployees who receive tips, but whose wages were unlawfully withheld and who did not receive tip credit notice, are entitled to recover unpaid minimum wage at the rates described in the MWHL, regardless of whether they actually received and kept tips earned."  Md. Code Ann., Lab. & Empl. § 3-413(c)(1).  Additionally, the FLSA and MHWL preclude employers from using previous tips or fees to offset the minimum wage amount owed to their employees. *McFeeley* v. *Jackson St. Ent., LLC*, 825 F.3d 235, 245-246 (4th Cir. 2016).  Ms. Marsh and Ms. Williams are therefore entitled to the full amount of unpaid minimum and overtime wages during the relevant timeframe.

As outlined in Chart 1, *see* Section I.A., *supra*, Ms. Marsh attested that she is owed earned, unpaid minimum wages in the amount of $48,350.00.  ECF No. 50-1 ¶ 23.  This amount must be reduced, however, because any relief awarded upon entry of a default judgment is constrained by the allegations in the operative pleading.  Fed. R. Civ. P. 54(c); *Select Specialty Hosp. - Quad Cities, Inc.* v. *WH Adm'rs, Inc.*, Civil Action No. PX-18-03586, 2020 WL 4569521, at *3 (D. Md. Aug. 7, 2020).  In support of her damage award, Ms. Marsh attested that

the relevant timeframe was May 2020 through February 14, 2023.  ECF No. 50-1 ¶ 4.  The Amended Complaint, however, alleges that the relevant timeframe concluded on February 2, 2023.  ECF No. 10 ¶ 2.  The Court will therefore reduce Ms. Marsh's claimed damages for January to February 2023 by multiplying the weekly amount by 3.6 weeks instead of five weeks, which reduces the subtotal from $2,650.00 to $1,908.00 and her total damages from $48,350.00 to $47,608.00.  *See* Section I., Chart 2, *supra.*  Consistent with the decisions of this Court, Ms. Marsh will be awarded an equal amount in liquidated damages for a total of $95,216.00.

Ms. Williams is entitled to the entirety of her claimed minimum wages ($48,050.00) and overtime wages ($45,052.50), which total $93,102.00.  Ms. Williams also claims damages for garnished tips and the fees that she attests Defendants required her to pay.  The FLSA and, thus the MWHL, require that an employee's wages be "free and clear."  *Morris*, 2024 WL 4476303, at *3; *Butler*, 2023 WL 3580374, at *6; *see also* 29 C.F.R. § 531.35 ("'[W]ages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.'  The wage requirements of the Act will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee.").  Thus, decisions of this Court have recognized that fees employers charge employees and tips employers garnish are compensable as wages under the FLSA and MWHL.  *E.g.*, *Morris*, 2024 WL 4476303, at *8; *Butler*, 2023 WL 3580374, at *7-8; *Prasch* v. *Bottoms Up Gentlemen's Club, LLC*, Civil Action No. LKG-23-634, 2024 WL 2977885, at *9 (D. Md. June 13, 2024).  Ms. Williams is therefore awarded an additional $45,000.00 for her garnished tips and fees paid, for a total of $138,102.50.  Consistent with the decisions of this Court, Ms. Williams will be awarded an equal amount in liquidated damages for a total of $276,205.00.

The total damages awarded to Ms. Marsh and Ms. Williams are outlined below.

**Chart 5**

**Jennifer Marsh Damages Award**

| Damages | | Amount |
|---|---|---|
| Lost Wages (Regular Time) | | $47,608.00 |
| Liquidated Damages | | $47,608.00 |
| | Total | $95,216.00 |

**Chart 6**

**Lakeia Williams Damages Award**

| Damages | | Amount |
|---|---|---|
| Lost Wages (Regular Time) | | $48,050.00 |
| Lost Wages (Overtime) | | $45,052.50 |
| Garnished Tips and Fees | | $45,000.00 |
| | Subtotal | $138,102.50 |
| Liquidated Damages | | $138,102.50 |
| | Total | $276,205.00 |

**B.    Attorney's Fees**

Under the MWHL, a prevailing plaintiff is entitled to recover reasonable attorney's fees. Md. Code Ann., Lab. & Empl. § 3-427. Here, Ms. Marsh and Ms. Williams seek a fee award of $16,490.00. Reasonable attorney's fees are determined using a three-part test. *McAfee* v. *Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). First, the Court calculates the lodestar figure by multiplying "the number of reasonable hours expended times a reasonable rate." *Id*. Second, the Court must subtract hours spent on any unsuccessful claims that are unrelated to the successful ones. *Id*. Finally, the Court awards "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.*

The Court must first determine the lodestar amount, that is, the reasonable hourly rate multiplied by reasonable hours expended. *Robinson* v. *Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009). Reasonableness is assessed using the *Johnson* factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber* v. *Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (adopting the factors set forth in *Johnson* v. *Ga. Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974)). The Court is not required to analyze each factor individually or even examine every factor but may instead consider the factors as a whole. *Martin* v. *Mecklenburg Cnty.*, 151 Fed. Appx. 275, 283 (4th Cir. 2005). Instead of seeking "auditing perfection," the goal of fee-shifting "is to do rough justice." *Fox* v. *Vice*, 563 U.S. 826, 838 (2011). Therefore, a court "may take into account their overall sense of a suit and may use estimates in calculating and allocating an attorney's time." *Id.* A court may not, however, consider the proportionality between the damages awarded to the plaintiff and the fee requested. *Jones* v. *Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 676 (4th Cir. 2015). Ultimately, the plaintiff has the burden of demonstrating that the requested fees are reasonable. *Jones* v. *Dancel*, 792 F.3d 395, 404 (4th Cir. 2015).

    1.    <u>Reasonable Rates</u>

In making the determination as to whether the hourly rates are reasonable, the Court finds *Johnson* factors five (customary fees for like work) and nine (experience and ability) most relevant.

For the Court to assess reasonable rates, "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which [counsel] seeks an award." *Robinson*, 560

F.3d at 244 (emphasis removed) (quoting *Plyler* v. *Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). "Satisfactory specific evidence" typically includes "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Robinson*, 560 F.3d at 245.

Here, counsel for Ms. William and Ms. Marsh, Gregg C. Greenberg, filed a sworn declaration that outlines his educational and professional background and professional accomplishments. ECF No. 50-3. While he did not present additional documentation in support of the fee award, the Court may rely on its own knowledge of the market. *CoStar Grp., Inc.* v. *LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000). In Maryland, that knowledge is embedded within the guidelines regarding hourly rates contained in Appendix B to the Local Rules. *Gonzalez* v. *Caron*, Civil Action No. CBD-10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011); Local Rule App'x B.3. Indeed, Plaintiffs contend that Mr. Greenberg's hourly rate is reasonable because it falls within these guidelines. ECF No. 50-3 at 2. The Fourth Circuit Court of Appeals has cautioned that a fee matrix—even one contained within a district court's local rules—may be considered but is not "presumptively reasonable." *De Paredes* v. *Zen Nails Studio LLC,* 134 F.4th 750, 754 (4th Cir. 2025). Instead, a district court "must consider all relevant evidence to determine the prevailing market rates in the relevant community, including lawyer affidavits, fee awards in similar cases, general surveys, fee matrices, and even its own personal knowledge." *Id.* (internal quotation marks and citations omitted). Mr. Greenberg's requested hourly rate is within this Court's Local Rules' guidelines and supported by his experience and the available evidence. Local Rule App'x B.3 (advising that the appropriate hourly rate attorneys with fifteen to nineteen years of experience is $275-425). The Court therefore finds that the requested hourly rate is reasonable.

        2.      <u>Reasonable Hours</u>

The next inquiry is whether the number of hours Ms. William and Ms. Marsh's attorney worked are reasonable. Mr. Greenberg asserts that the reduced number of hours worked after "cutting excessive, duplicative, and/or unnecessary work performed" is reasonable based on his professional billing judgment. ECF No. 50-3. The Court finds *Johnson* factors one (time and labor), two (novelty and difficulty), and three (required skill) most relevant to this question.

It is the attorney's burden to provide sufficient information in support of billing entries. *Kreuze* v. *VCA Animal Hosps., Inc.*, Civil Action No. PJM-17-1169, 2019 WL 2107263, at *7 (D. Md. May 14, 2019) (stating that courts have declined to award fees for hours where descriptions are unclear as to whether the task was clerical or legal). "[C]ounsel is not required to record in great detail how each minute . . . was expended," so long as they identify the general subject matter of their time expenditures. *Hensley* v. *Eckerhart*, 461 U.S. 424, 437 n.12 (1983). "[A]cross-the-board reductions are appropriate when billing records are voluminous and multiple billing entries are in dispute." *Chapman* v. *Ourisman Chevrolet Co.*, Civil Action No. AW-08-2545, 2011 WL 2651867, at *18 n.11 (D. Md. July 1, 2011) (alteration in original) (quotation marks and citation omitted).

The Court first considers the number of hours billed for reasonableness. *Guillen* v. *Armour Home Improvement, Inc.*, Civil Action No. DLB-19-2317, 2024 WL 1346838, at *6-7 (D. Md. Mar. 29, 2024) (stating that court evaluates only the "hours sought"—the number of hours worked minus non-billable tasks—to determine reasonableness for purposes of the Lodestar analysis) (collecting cases). Mr. Greenberg filed a spreadsheet that outlines the work he performed for Ms. Marsh and Ms. Williams. ECF No. 50-4. Examination of the spreadsheet reveals that there are no administrative or frivolous costs. Accordingly, the total time expended (38.8 hours) is reasonable.

      3.      <u>Adjustments to the Lodestar Figure</u>

After determining the lodestar figure the Court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones," and award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88. When calculating a reasonable fee award, "the most critical factor" is "the degree of success obtained." *Brodziak* v. *Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *Hensley*, 461 U.S. at 436). An award is reduced if "the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 439-440. The Court must also consider nonmonetary success, such as vindicating rights and deterring future violations. *Butler* v. *Directsat USA, LLC*, Civil Action No. DKC 10-2747, 2016 WL 1077158, at *6 (D. Md. Mar. 18, 2016); *see also City of Riverside* v. *Rivera*, 477 U.S. 561, 574 (1986) ("[A] successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards."). None of these considerations weigh in favor of adjusting the lodestar figure in this case. Counsel secured a default judgment on all of Plaintiffs' claims and that total fee award is not disproportionate to the total damage award. The Court will therefore award the full amount of requested attorney's fees.

**C.    Costs**

The Court has the discretion to determine costs that are assessed against a losing defendant. *Roy* v. *County of Lexington*, 141 F.3d 533, 549 (4th Cir. 1998). Costs may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell* v. *McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). Service of process, filing fees, attorney admission costs, among other things, are reimbursable. *Butler*, 2023 WL 6517593, at *4. Plaintiffs seek $802.00 in litigation costs, which include the filing fee, attempted service of process, service on Defendants' resident

16

agents, and service of process fees.  ECF No. 50-4 at 4.  These costs are reasonable and will be awarded in full.

## III.   CONCLUSION

For the foregoing reasons, it is hereby ordered that Ms. Marsh and Ms. Williams' request for damages, attorney's fees, and costs is granted.  The Court will enter an award of $95,216.00 in damages for Ms. Marsh; $276,205.00 in damages for Ms. Williams; $16,490.00 in attorney's fees; and $802 in costs.  A separate Order follows.

Date:  July 22, 2025                                     /s/
                                                  Erin Aslan
                                                  United States Magistrate Judge